IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JERMAINE WALKER, | ) | |
| | ) | |
| Plaintiff | ) | Case No: |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL WHITE, ERIC REYES, | ) | |
| SEBASTIAN FLATLEY, BRIAN DALY, | ) | |
| the CITY OF CHICAGO, THOMAS | ) | JURY TRIAL DEMANDED |
| FINNELLY, COOK COUNTY, | ) | |
| ILLINOIS, and UNIDENTIFIED | ) | |
| CHICAGO POLICE OFFICERS AND | ) | |
| COOK COUNTY STATE'S ATTORNEY | ) | |
| INVESTIGATORS, | ) | |

Defendants.

## **COMPLAINT**

Now comes Plaintiff, JERMAINE WALKER, by and through his attorneys,

LOEVY & LOEVY, and complaining of Defendants MICHAEL WHITE (Star No.

860), ERIC REYES (Star No. 10126), SEBASTIAN FLATLEY (Star No. 13734),

BRIAN DALY (Star No. 9364), THOMAS FINNELLY, the CITY OF CHICAGO,

COOK COUNTY, ILLINOIS, and unidentified Chicago police officers and Cook

County State's Attorney investigators, states as follows:

### **Introduction**

1.      Plaintiff Jermaine Walker was a computer science student at Fisk

University when he fell victim to misconduct all too common in today's society:

The Defendant police officers planted drugs on him, fabricated evidence, and lied about it, causing Mr. Walker to spend a decade of his life falsely imprisoned for a crime he did not commit.

2.      Mr. Walker's case is atypical in two respects. One, the Defendants were caught framing Plaintiff, leading to Mr. Walker's exoneration and his later receipt of a certificate of innocence. Two, Defendant Finnelly, a member of the Cook County State's Attorney's Office, misleading photographic evidence as part of the Defendants' plot to frame Plaintiff, a plot that took ten years to unravel.

3.      Mr. Walker was released from his wrongful incarceration, but has struggled to recover all that he has lost. He missed the most formative years of his life, when his peers were starting their careers, getting married, and having children. He brings this suit to seek such redress for these losses as the law allows.

## JURISDICTION AND VENUE

4.      This action is brought under 42 U.S.C. § 1983 to address the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution and under state law.

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

6.      Venue is proper under 28 U.S.C. § 1391(b) because, upon

information and belief, all defendants reside in this district, and nearly all of the

events giving rise to the claims asserted herein occurred within this district.

## THE PARTIES

7.     Plaintiff JERMAINE WALKER is a resident of Illinois. At the time of

his arrest  he was studying computer science at Fisk University on a full

scholarship

8.     Defendant Sergeant MICHAEL WHITE was at all times relevant to

this Complaint a Chicago Police Sergeant (Star No. 860) acting under color of law

and within the scope of his employment.  Defendant White is sued in his

individual capacity.

9.     Defendant Officer ERIC REYES was at all times relevant to this

Complaint a Chicago Police Officer (Star No. 10126) acting under color of law

and within the scope of his employment.  Defendant Reyes is sued in his

individual capacity.

10.     Defendant Officer SEBASTIAN FLATLEY was at all times relevant

to this Complaint a Chicago Police Officer (Star No. 13734) acting under color of

law and within the scope of his employment.  Defendant Flatley is sued in his

individual capacity.

11.     Defendant Officer BRIAN DALY was at all times relevant to this

Complaint a Chicago Police Officer (Star No. 9364) acting under color of law and

within the scope of his employment. Defendant DALY is sued in his individual capacity.

12.     Defendant THOMAS FINNELLY was at all times relevant to this Complaint an investigator employed by the Cook County State's Attorney's Office acting under color of law and within the scope of his employment. Defendant Finnelly is sued in his individual capacity.

13.     Defendant the CITY OF CHICAGO is a political subdivision of the State of Illinois. At the time of the events giving rise to this Complaint, the City of Chicago was the employer of Defendants Michael White, Eric Reyes, Sebastian Flatley, Brian Daly, and Unidentified Chicago Police Officers (together, "Defendant Officers") who acted pursuant to the City's policies and practices. As the employer of the Defendant Officers, the City of Chicago is liable for their torts under the doctrine of respondeat superior.

14.     Defendant COOK COUNTY, ILLINOIS (the "County") is a political subdivision of the State of Illinois. At all times relevant to this Complaint, the County funded the operations of the Cook County State's Attorney's Office, which employed Defendant Finnelly and Unidentified Cook County State's Attorney's Investigators. Illinois law requires that the County indemnify claims against state employees where the County funds the state office that employs them.

4

15. UNIDENTIFIED CHICAGO POLICE OFFICERS were at all times relevant to this Complaint officers serving in the Chicago Police Department. They are sued in their individual capacities.

16. UNIDENTIFIED COOK COUNTY STATE'S ATTORNEY'S INVESTIGATORS were at all times relevant to this Complaint investigators employed by the Cook County State's Attorney's Office. They are sued in their individual capacities.

## FACTUAL ALLEGATIONS

17. On the evening of February 21, 2006, Mr. Walker and his brother Russell Walker were headed to a family gathering at their sister's house on the north side of Chicago.

18. Mr. Walker was at that time a student at Fisk University in Tennessee, where he was studying computer science and doing research on superconductivity, all on a full scholarship.

19. Mr. Walker was driving his car and Russell was in the passenger seat.

20. At about 8:30 pm, the brothers were parked in the parking lot of J.J. Pepper's at 4800 North Sheridan Road, where they had stopped to make a purchase before going to their sister's home.

21.     As he pulled out of the parking lot, Mr. Walker turned onto West Lawrence Avenue.

22.     He immediately noticed lights from a police car behind him, and, understanding that he was being directed to pull over, he turned into an alley adjacent to Lawrence House, an apartment building at 1020 West Lawrence Avenue.

23.     Mr. Walker had not committed any infraction that would have justified being stopped by the police.

24.     The Defendant Officers followed Mr. Walker's car into the alley.

25.     Defendant Reyes approached Plaintiff's car with his gun drawn and requested his driver's license, insurance, and registration.

26.     Despite having been unjustly stopped, Mr. Walker provided his valid driver's license, current registration, and current insurance to Defendant Reyes.

27.     Mr. Walker asked Defendant Reyes why he had been pulled over, but Reyes refused to give him any explanation.

28.     Defendant Reyes then ordered Mr. Walker to get out of the car so the officers could search it.

29.     Defendant Reyes had no basis to stop Plaintiff, let alone to demand that he exit his car and submit to an illegal search of his car.

30. Knowing that the Defendants had no grounds to search the car, Mr. Walker declined to exit his car. Instead, believing that his rights were being violated, Mr. Walker asked to speak to a sergeant.

31. Defendant Sergeant White arrived at the scene shortly thereafter. He asked Mr. Walker why he needed to speak to a sergeant. Mr. Walker responded that he had been pulled over for no reason and the Defendant Officers had not given him any justification for the stop.

32. Rather than discipline his subordinate officers, or articulate to Mr. Walker why he had been pulled over, Defendant White also ordered Mr. Walker out of his car without justification.

33. Mr. Walker was increasingly afraid for his safety, given the Defendant Officers' unlawful traffic stop, menacing display of a weapon, and hostile tone when they tried to violate his constitutional right to be free of unreasonable searches and seizures.

34. When Mr. Walker delayed exiting his car, the Defendant Officers began screaming at him. Fearing what the Defendant Officers might do, Mr. Walker then exited the car, still without knowing why he had been stopped or why he was being ordered out of his car.

35.     The Defendants were irate that Plaintiff had not immediately submitted to their unjust display of authority. As soon as he exited his car, Defendants White, Reyes, and Flatley began to beat Mr. Walker.

36.     A surveillance camera was mounted in the alley where the events described above transpired. The camera was in plain sight to everyone present.

37.     That camera, which fed images of the alley to an employee inside the adjacent Lawrence House, was part of Lawrence House's security system.

38.     While still inside his car, Mr. Walker noticed the camera capturing the events. After the Defendants began beating him, he pointed out the camera to the Defendant Officers and told them their unconscionable behavior was being recorded.

39.     Nevertheless, Mr. Walker was beaten several times by the Defendants and then handcuffed and arrested. Despite having committed no crime, Mr. Walker was falsely charged with possession with intent to distribute narcotics within 1,000 feet of a school.

40.     In their police reports of the incident, the Defendant Officers falsely claimed that Plaintiff possessed narcotics while in the alley. This was a complete fabrication.

41.     The Defendants inventoried narcotics and falsely claimed that the drugs had been possessed by Plaintiff. Those drugs were later used as evidence against Mr. Walker at trial.

42.     All along, Mr. Walker contended that he had not been dealing narcotics, but even if he had been, he would not have done so in front of the camera in the alley recording all of the events.  But without any photographs or witnesses of his own, he could not corroborate his account.

43.     At trial, Defendant Finnelly testified that  he was assigned by the State's Attorney's Office to go to the scene of the arrest to take pictures of the alley and to photograph any camera that might be there, as part of his duties as an investigator for the Office.

44.     Despite the presence of the camera in plain view on the west wall of the alley, Defendant Finnelly intentionally did not photograph it. He photographed other areas of the alley, but deliberately avoided photographing the location where Plaintiff's car had been stopped below the camera.

45.     Specifically, the camera at issue is located just inside the mouth of

the alley, clearly visible. The photographs below accurately portray the location

of the camera and the lack of obstructions surrounding the camera on February

21, 2006:

 

46.     An inspection of Defendant Finnelly's photographs demonstrates

his intentional misconduct.

47.     When directed to photograph the camera in the alley, Defendant

Finnelly positioned himself in such a manner that it would appear he was

photographing the entire alley, but in fact he intentionally prevented the camera

from appearing in all nine of his photographs of the alley.

48. For example, rather than photographing the alley from the mouth of the alley, which would depict the camera on the left side of the frame just inside the alley, Defendant Finnelly walked into the alley just far enough that the camera would not appear in the photograph.

49. The following is an accurate reproduction of the photograph taken by Defendant Finnelly which was introduced as People's Exhibit 4 at Plaintiff's trial, suggesting that there was no camera in the alley:



50.     Defendant Finnelly also photographed the alley from the opposite direction, facing south. However, he deliberately chose a vantage point that would obscure the camera. Specifically, he stood to the right side of the alley, facing south, so that the telephone poles in the alley would hide the camera.

51.     The following is an accurate reproduction of the photograph taken by Defendant Finnelly which was introduced as People's Exhibit 8 at Plaintiff's trial, likewise making it appear that there was no camera in the alley:



52.     Knowing that his sole assignment was to photograph any cameras in the alley, Defendant Finnelly then proceeded to take close-up photographs of any objects that might appear to be cameras in the overviews of the alley that he

photographed, depicted above. Taking close-ups to rule out the possibility that the objects might be cameras made it appear as if Defendant Finnelly had scoured the alley for anything that might appear to be a camera, but found nothing.

53.     The following is an accurate reproduction of the photograph taken by Defendant Finnelly which was introduced as People's Exhibit 9 at Plaintiff's trial:



54.     The following is an accurate reproduction of the photograph taken by Defendant Finnelly which was introduced as People's Exhibit 10 at Plaintiff's trial.



55.     Prosecutors relied on the false police reports and the misleading photographs of the alley in deciding to and continuing to prosecute Mr. Walker.

14

56.     Mr. Walker could not afford his bail, so he was forced to prepare for trial while imprisoned in Cook County Jail.  Knowing he was innocent, Mr. Walker asserted his right to a speedy trial as his only means to gain his release from the false charges.

57.     In preparation for trial, Mr. Walker asked the court to appoint an investigator to obtain photographs of the camera in the alley and to locate witnesses who could testify that the camera was there on February 21, 2006.  Mr. Walker planned to use this evidence to support his truthful defense that the drugs had been planted, because he would not have engaged in a drug deal in front of a camera that might be recording the transaction.

58.     The court, unfortunately, denied this request, permitting Defendant Finnelly's manipulated photographs to stand unrebutted.

59.     At trial, Defendant Finnelly testified that he walked the entire length of the alley, but denied having seen any camera there.

60.     This testimony was false.

61.     Defendants White and Reyes also testified at trial that there was no camera in the alley.

62.     Their testimony was also false.

63.     Based on Defendants' falsehoods and fabrications, the State was able to paint Plaintiff as a liar at his trial, arguing:

> There was a camera in the alley? Ladies and gentlemen, there is absolutely no evidence of that. Witness after witness after witness took that stand and told you there is no camera. You have pictures of the alley, including close-ups that show you there is no camera.
>
> If there was a camera, do you think defendant and his brother would be stupid enough to deal drugs in front of it? Come on. Don't you think they would pick another alley? Get real. The police officers planted drugs? This is the most baffling of all.

64.     Despite his innocence, and based on Defendants' false police reports, their planted evidence, and the misleading photographs, Mr. Walker was convicted and sentenced to 22 years imprisonment.

65.     Mr. Walker appealed his conviction, arguing that the trial court was wrong to deny him an investigator. Relying heavily on Defendant Finnelly's false testimony and misleading photographs, the State argued that access to an investigator would not have changed anything, because "the evidence and testimony demonstrated that there was no camera in the alley where defendant was arrested."

66.     The Illinois Appellate Court agreed with the State, stating that "the overwhelming evidence at trial supports a finding" that there was no camera in the alley. Accordingly, based on Defendants' lies, the appellate court ruled that

16

sending the case back to appoint an investigator would achieve nothing.

67. On May 4, 2015, Mr. Walker filed a petition for post-conviction relief presenting new evidence proving the camera's existence and demonstrating that the Defendants lied under oath.

68. While the petition was pending, the Cook County State's Attorney investigated Mr. Walker's claims about the existence of the camera. That investigation led the State's Attorney to conclude that Defendants Finnelly, Flatley, and Reyes had perjured themselves.

69. The State then filed its own motion to vacate Mr. Walker's conviction and sentence, and to dismiss the charges against him.

70. On March 25, 2016, after more than ten years of incarceration, the Cook County Circuit Court vacated the indictment against Mr. Walker and dismissed all charges.

71.     In doing so, the court said:

Well, obviously there were witnesses that were sworn under oath that testified and presented evidence corroborating their testimony. And when someone has taken an oath to tell the truth and testifies, there is a presumption that they are going to tell the truth. Obviously, we have found out that that does not occur. A severe injustice was done here. But everybody in the court system was relying on the information and the photographs that were sworn to as a truth, and it is very disturbing and upsetting, especially as a judge, to be involved in a system where an officer, especially an officer of the court, would come in an swear under oath to something that was not true. That's a terrible thing and very disheartening to find out that someone has done something like this.

                              *   *   *

Well, Jermaine, you are very kind in this horrible situation that you have been put in. There's no words that can explain how sorry I am that the justice system failed in this case. And we worked very hard to try to ensure that the truth comes out and, you know, it just took so long for it to come out.

It's really outrageous that police officers and an officer of the State's Attorney's office swore under oath here and actually backed it up with photographs that didn't even fit the relevant situation that we had in your case and, you know, on behalf of the entire system, I am so sorry that this has happened to you, and we hope that it, you know, does not ever happen again.

I have been on—I was a State's Attorney for 14 years, a judge for 21 years, and this has never happened. I have never had to do this, and I am sickened by the fact that I have had to do it at all since I have been here. And I know that form the very moment that I saw the affidavit that this camera did in fact exist, that I had everybody give it their utmost attention so that we can get it resolved and so that we could come to the just outcome and that you could be released.

So at this time, the defendant's conviction will be vacated.

72. On April 27, 2016, the same court granted Mr. Walker a Certificate of Innocence.

## MR. WALKER'S DAMAGES

73. Mr. Walker spent ten years in prison for a crime that he did not commit.

74. As a result of his wrongful incarceration, Mr. Walker was stripped of the pleasures of basic human experience, from the most quotidian to the most important, which all free people enjoy as a matter of right. For ten years, he was unable to share holidays, births, funerals, and other life events with loved ones. He was deprived of the opportunity to work, to vote, and the fundamental freedom to live one's life as an autonomous human being.

75. As a result of the foregoing, Mr. Walker has suffered severe emotional distress, exacerbation of existing mental illness, extreme anxiety, thoughts of suicide, and physical sickness and injury.

76. Moreover, at the time of his conviction and incarceration, Mr. Walker was a college student on a full scholarship, studying computer science. He has suffered the loss of his scholarship as well the possibility of earning income from a career in information technology.

## Count I – 42 U.S.C. § 1983
## Fourteenth Amendment

77.     Plaintiff incorporates all of the paragraphs of this Complaint as if fully restated herein.

78.     As set forth more fully above, the Defendant Officers and Investigators, acting individually, jointly, and in conspiracy, fabricated false reports and other evidence and/or withheld exculpatory evidence, including but not limited to:

> (1)  Fabricating evidence that no camera existed in the alley which could have recorded the encounter between Mr. Walker and the Defendant Officers, and withholding evidence of that camera's existence;

> (2)  Fabricating false reports that drugs were found in Mr. Walker's possession on February 21, 2006, and withholding the true origin of those narcotics; and

> (3)  Inventorying narcotics from another source and pretending they were Mr. Walker's.

79.     In doing so, the Defendant Officers and Investigators violated their clearly established constitutional duty to report all material exculpatory and impeachment information to prosecutors.

20

80.     Absent the Defendant Officers and Investigators' misconduct, the prosecution of Plaintiff would not have been pursued, and Plaintiff would not have been convicted.

81.     The Defendants Officers and Investigators' misconduct directly and proximately resulted in the unjust and wrongful conviction of Plaintiff and his wrongful imprisonment, denying him his constitutional right to a fair trial, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

82.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and wantonly, with malice and willful indifference to Plaintiff's clearly established constitutional rights.

83.     As a direct and proximate result of this violation of his constitutional right to a fair trial, Plaintiff suffered injuries including but not limited to loss of liberty, physical sickness and injury, and emotional distress.

84.     The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Chicago of pursuing convictions in reckless disregard of the truth by using fabricated evidence and withholding material exculpatory and impeachment evidence in that:

> (a) a matter of both policy and practice, the City of Chicago directly
> encourages, and is thereby the moving force behind, the very

type of misconduct at issue here by failing to adequately train, supervise and control its employees, such that its failure to do so manifests deliberate indifference;

(b) as a matter of both policy and practice, the City of Chicago facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading police officers in the City of Chicago to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those that affected Plaintiff;

(c) as a matter of widespread practice so prevalent as to comprise municipal policy, police officers in the City of Chicago abuse citizens in a manner similar to that alleged by Plaintiff, yet the City of Chicago makes findings of wrongdoing in a disproportionately small number of cases;

(d) municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the City of Chicago Police Department by which employees fail to report misconduct committed by other employees, such as the misconduct at issue in this case; and/or

22

(e) the City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

85.     In this way, Defendant the City of Chicago violated Plaintiff's rights by maintaining policies and practices that were the moving force behind the foregoing constitutional violations.

86.     These practices, so widespread as to constitute de facto policy in the City of Chicago, were able to exist and thrive because municipal policy makers with authority over the Chicago Police Department exhibited deliberate indifference to the problem, thereby effectively ratifying it.

### Count II – 42 U.S.C. § 1983
### Failure to Intervene

87.     Plaintiff incorporates all of the paragraphs of this Complaint as if fully restated herein.

88.     As set forth more fully above, the Defendant Officers and Investigators had a reasonable opportunity to intervene to prevent the deprivation of Mr. Walker's constitutional rights, but failed to do so.

89.     In failing to intervene, the Defendant Officers and Investigators violated their clearly established constitutional duty to report all material exculpatory and impeachment information to prosecutors.

90.     Absent Defendants' misconduct, the prosecution of Plaintiff would not have been pursued, and Plaintiff would not have been convicted.

91.     Defendants' misconduct directly and proximately resulted in the unjust and wrongful conviction of Plaintiff and his wrongful imprisonment, denying him his constitutional right to a fair trial, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

92.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and wantonly, with malice and willful indifference to Plaintiff's clearly established constitutional rights.

93.     As a direct and proximate result of this violation of his constitutional right to a fair trial, Plaintiff suffered injuries including but not limited to loss of liberty, physical sickness and injury, and emotional distress.

94.     The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Chicago of pursuing convictions in reckless disregard of the truth by using fabricated evidence and withholding material exculpatory and impeachment evidence in that:

>      (a) as a matter of both policy and practice, the City of Chicago
>           directly encourages, and is thereby the moving force behind, the
>           very type of misconduct at issue here by failing to adequately

train, supervise and control its employees, such that its failure to do so manifests deliberate indifference;

(b) as a matter of both policy and practice, the City of Chicago facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading police officers in the City of Chicago to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those that affected Plaintiff;

(c) as a matter of widespread practice so prevalent as to comprise municipal policy, police officers in the City of Chicago abuse citizens in a manner similar to that alleged by Plaintiff, yet the City of Chicago makes findings of wrongdoing in a disproportionately small number of cases;

(d) municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the City of Chicago Police Department by which employees fail to report misconduct committed by other employees, such as the misconduct at issue in this case; and/or

(e) the City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

95. In this way, Defendant the City of Chicago violated Plaintiff's rights by maintaining policies and practices that were the moving force behind the foregoing constitutional violations.

96. These practices, so widespread as to constitute de facto policy in the City of Chicago, were able to exist and thrive because municipal policy makers with authority over the Chicago Police Department exhibited deliberate indifference to the problem, thereby effectively ratifying it.

## Count III – 42 U.S.C. § 1983
## Conspiracy

97. Plaintiff incorporates all of the paragraphs of this Complaint as if fully restated herein.

98. As set forth more fully above, the Defendant Officers and Investigators agreed among themselves and with other individuals to act in concert in order to deprive Plaintiff of his constitutional rights, including his rights under the Fourth and Fourteenth Amendments, all as described in the various paragraphs of this Complaint.

99.     Additionally, before and after Plaintiff's conviction, the Defendant Officers and Investigators further conspired, and continue to conspire, to deprive Plaintiff of exculpatory information to which he was lawfully entitled and which would have led either to his not being charged, his being acquitted, or his more timely exoneration. Each Defendant shared in the objective of depriving Plaintiff of his constitutional rights in this way.

100.    In this manner, Defendants Officers and Investigators, acting in concert with other unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

101.    In furtherance of the conspiracy, each of the co-conspirators engaged in and facilitated numerous overt acts, including but not limited to those set forth above – such as fabricating evidence and withholding exculpatory evidence – and was an otherwise willful participant in joint activity.

102.    As a direct and proximate result of the illicit prior agreements and actions in furtherance of the conspiracy referenced above, Plaintiff's rights were violated, and he sustained injuries, including loss of liberty, physical injury and sickness, and emotional pain and suffering, as is more fully alleged above.

103.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and wantonly, with malice and willful indifference to Plaintiff's clearly established constitutional rights.

104.    Absent Defendants' misconduct, the prosecution of Plaintiff would not have been pursued, and Plaintiff would not have been convicted.

105.    Defendants' misconduct directly and proximately resulted in the unjust and wrongful prosecution and conviction of Plaintiff and his wrongful imprisonment, denying him his constitutional right to a fair trial, in violation of the Fourth Amendment and/or the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

106.    As a direct and proximate result of this violation of his constitutional right to a fair trial, Plaintiff suffered injuries including but not limited to loss of liberty, physical sickness and injury, and emotional distress.

107.    The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Chicago of pursuing convictions in reckless disregard of the truth by using fabricated evidence and withholding material exculpatory and impeachment evidence in that:

> (a) as a matter of both policy and practice, the City of Chicago directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its employees, such that its failure to do so manifests deliberate indifference;

28

(b) as a matter of both policy and practice, the City of Chicago facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading police officers in the City of Chicago to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those that affected Plaintiff;

(c) as a matter of widespread practice so prevalent as to comprise municipal policy, police officers in the City of Chicago abuse citizens in a manner similar to that alleged by Plaintiff, yet the City of Chicago makes findings of wrongdoing in a disproportionately small number of cases;

(d) municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the City of Chicago Police Department by which employees fail to report misconduct committed by other employees, such as the misconduct at issue in this case; and/or

(e) the City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual

knowledge of the same, thereby causing the types of injuries alleged here.

108. In this way, Defendant the City of Chicago violated Plaintiff's rights by maintaining policies and practices that were the moving force behind the foregoing constitutional violations.

109. These practices, so widespread as to constitute de facto policy in the City of Chicago, were able to exist and thrive because municipal policy makers with authority over the Chicago Police Department exhibited deliberate indifference to the problem, thereby effectively ratifying it.

## Count IV – 42 U.S.C. § 1983
## Fourth Amendment Malicious Prosecution

110. Plaintiff incorporates all of the paragraphs of this Complaint as if fully restated herein.

111. As described more fully above, the Defendant Officers and Investigators made, influenced, or participated in the decision to initiate the criminal prosecution against Mr. Walker.

112. This prosecution was initiated without probable cause to believe that Mr. Walker had committed the crime.

113. On March 25, 2016, the proceeding was resolved in Mr. Walker's favor when the indictment against him was dismissed.

114. The misconduct described in this Count was objectively

unreasonable and was undertaken intentionally and wantonly, with malice and willful indifference to Plaintiff's clearly established constitutional rights.

115.   As a direct and proximate result of the legal proceeding maliciously instituted by the Defendant Officers and Investigators, Plaintiff suffered damages, including loss of liberty, physical injury and sickness, and emotional pain and suffering, as is more fully alleged above.

**Count V - State Law**
**Malicious Prosecution**

116.   Plaintiff incorporates all of the paragraphs of this Complaint as if fully restated herein.

117.   As described more fully above, the Defendant Officers and Investigators maliciously and without any reasonable ground of suspicion, and unsupported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that Mr. Walker was guilty of the offense, instituted prosecution against him.

118.    The proceeding was resolved in Mr. Walker's favor when the indictment against him was dismissed on March 25, 2016.

119.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and wantonly, with malice and willful indifference to Plaintiff's clearly established constitutional rights.

120.    As a direct and proximate result of the legal proceeding maliciously instituted by Defendant Officers and Investigators, Plaintiff suffered damages, including loss of liberty, physical injury and sickness, and emotional pain and suffering, as is more fully alleged above.

**Count VI – Illinois State Law
Conspiracy**

121.    Plaintiff incorporates all of the paragraphs of this Complaint as if fully restated herein.

122.    As described more fully in the preceding paragraphs, the Defendant Officers and Investigators entered into an agreement among themselves to participate in an unlawful act or act in an unlawful manner toward Plaintiff, including by conspiring to deprive Mr. Walker of his constitutional rights.

123.    Each of the Defendant Officers and Investigators was a willing participant in and committed one or more overt acts to further their common scheme of acting in an unlawful manner toward Plaintiff.

124.    As a proximate result of this conspiracy, Plaintiff suffered damages, including but not limited to physical sickness and injury and emotional distress.

125.    The misconduct described in this Count was undertaken by Defendant Officers and Investigators within the scope of their employment and under color of law such that their employers, the City of Chicago and Anita Alvarez, in her official capacity as Cook County State's Attorney, are liable for their actions.

### Count VII – State Law
### Intentional Infliction of Emotional Distress

126.    Plaintiff incorporates all of the paragraphs of this Complaint as if fully restated herein.

127.    In the manner described more fully above, by depriving Mr. Walker of his right to a fair trial and by maliciously prosecuting him, the Defendant Officers and Investigators engaged in extreme and outrageous conduct.

128.    In carrying out the actions described above, Defendant Officers and Investigators either intended to inflict or knew that there was a high probability that their conduct would cause severe emotional distress.

129.    These Defendants' actions were willful and wanton, undertaken with malice and reckless indifference to the rights of others.

130.    The misconduct described in this Count was undertaken by Defendant Officers and Investigators within the scope of their employment such that their employers, the City of Chicago and Anita Alvarez, in her official capacity as Cook County State's Attorney, are liable for their actions.

131.    As a direct and proximate result of misconduct, Mr. Walker suffered injuries including but not limited to severe emotional distress.

## COUNT VIII– State Law
## Respondeat Superior

132.    Plaintiff incorporates all of the paragraphs of this Complaint as if fully restated herein.

133.    In committing the acts alleged in the preceding paragraphs, the Defendant Officers were employees and agents of the City of Chicago and the Chicago Police Department acting at all relevant times within the scope of their employment.

134.    Defendant the City of Chicago is liable as principal for all torts committed by its agents.

## Count IX – State Law
## Indemnification

135.    Plaintiff incorporates all of the paragraphs of this Complaint as if fully restated herein.

136.    Illinois law requires public entities to pay any tort judgment for compensatory damages against an employee acting within the scope of his or her employment.  Illinois law also requires that Cook County pay any tort judgment for compensatory damages against a state employee where the County funds the state office that employs the tortfeasor. The Cook County State's Attorney's

Office is funded by Defendant Cook County.

137.    The Defendant Officers and Investigators are or were employees of the City of Chicago and the Cook County State's Attorney's Office, who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE Plaintiff, Jermaine Walker, respectfully requests that this Court enter judgment in his favor and against Defendants MICHAEL WHITE, ERIC REYES, SEBASTIAN FLATLEY, BRIAN DALY, THOMAS FINNELLY, the CITY OF CHICAGO, COOK COUNTY, ILLINOIS, and UNIDENTIFIED CHICAGO POLICE OFFICERS AND COOK COUNTY STATE'S ATTORNEY INVESTIGATORS, awarding compensatory damages, costs, and attorneys' fees against each Defendant, along with punitive damages against each of the individual Defendants, as well as any other relief this Court deems appropriate.

## JURY DEMAND

Plaintiff, JERMAINE WALKER, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,


/s/ Gretchen E. Helfrich
*One of Plaintiff's Attorneys*

Jon Loevy
Russell Ainsworth
Elizabeth Mazur
Gretchen E. Helfrich
LOEVY & LOEVY
311 North Aberdeen Street
Third Floor
Chicago, Illinois 60607
Phone: (312) 243-5900
Fax:    (312) 243-5902
Jon@loevy.com
Russell@loevy.com
Elizabethm@loevy.com
Gretchen@loevy.com