JERMAINE WALKER,

       Plaintiff,

   v.

MICHAEL WHITE, *et al.*,

       Defendants.

No. 16 CV 7024

Judge Manish S. Shah

### MEMORANDUM OPINION AND ORDER

Jermaine Walker brings claims against several Chicago police officers, the City of Chicago, an investigator for the Cook County State's Attorney's Office, and Cook County arising out of his arrest and later conviction for possession of narcotics, a conviction which was vacated after Walker was incarcerated for ten years. Defendants move to dismiss. For the following reasons, the motions to dismiss are granted in part, denied in part.

## I. Background[1]

On the evening of February 21, 2016, college student Jermaine Walker was driving with his brother to attend a family gathering on the north side of Chicago. On the way, they stopped to make a purchase at a store. As Walker pulled out of the parking lot and onto West Lawrence Avenue, he noticed lights from a Chicago police

---

[1] The allegations from Walker's amended complaint, [24], are taken as true for resolving the motions to dismiss. Bracketed numbers refer to entries on the district court docket.

car behind him. Walker pulled over into an alley adjacent to an apartment building, and the officers followed Walker's car into the alley.

With his gun drawn, defendant Officer Eric Reyes approached Walker's car and asked for Walker's driver's license, insurance, and registration. Walker provided them and asked why he had been pulled over. Reyes did not provide an explanation but ordered Walker out of his car so it could be searched. Walker declined to exit his car and asked to speak to a sergeant. Defendant Michael White, a sergeant, arrived shortly thereafter and asked why Walker needed to speak to him. Walker responded that he had been pulled over for no reason and had not been given any justification for the stop. White then ordered Walker out of his car. Walker delayed, and the officers began screaming at him. Walker then exited his car. White, Reyes, and Officer Sebastian Flatley (another defendant) began beating Walker. Other officers nearby, including defendants Brian Daly, Raul Baeza, and Thomas Gaynor, either participated in beating Walker or stood by and watched other officers beat Walker.

The apartment building adjacent to the alley had a surveillance camera mounted in the alley, in plain sight to everyone present. Walker had noticed the camera while he was in his car. When the officers started beating him, he pointed out that they were being recorded. After he was beaten, Walker was handcuffed, arrested, and charged with possession with intent to distribute narcotics within 1000 feet of a school. Walker alleges that the officers and their police reports falsely

claimed that Walker had narcotics, and that the officers then inventoried narcotics to support this story.

Walker could not afford bail, so he was detained at the Cook County Jail. He asserted his right to a speedy trial. He also asked the court to appoint him an investigator to photograph the camera in the alley and to locate witnesses who could testify that the camera was in the alley as of the date of his arrest. Walker's requested for an investigator was denied.

The Cook County State's Attorney's Office assigned defendant Thomas Finnelly, an investigator for the office, to take photographs of the alley and any camera that might be there. Finnelly took several photographs of the alley. Although the surveillance camera was in plain view, Finnelly selectively photographed the alley to avoid including the camera in any photographs. Prosecutors relied on the officers' false police reports and Finnelly's photographs in deciding to continue to prosecute Walker. At Walker's trial, Finnelly's photographs were admitted as evidence, and Finnelly testified that he walked the entire length of the alley but did not see a camera. White and Reyes also testified that there was no camera in the alley. The inventoried drugs were also used as evidence against Walker at trial. Walker was convicted and sentenced to twenty-two years in prison.

Walker appealed his conviction, arguing that the trial court erred in denying him an investigator. On appeal, the state argued that access to an investigator would not have altered the outcome because the evidence at trial demonstrated that no camera existed. The appellate court upheld the conviction, holding that the

overwhelming evidence at trial supported a finding that there was no camera in the alley and that appointing an investigator would have achieved nothing.

In May 2015, Walker filed a petition for post-conviction relief, presenting evidence of the camera's existence. While the petition was pending, the Cook County State's Attorney's Office investigated Walker's claim that the camera existed. After investigating, the State's Attorney's Office concluded that Finnelly, Flatley, and Reyes perjured themselves at Walker's trial. The state moved to vacate Walker's conviction and sentence, and to dismiss the charges against him. In March 2016, after Walker had been incarcerated for ten years, the Cook County Circuit Court vacated the indictment against him and dismissed all charges. A month later, the court granted Walker a Certificate of Innocence under 735 ILCS 5/2-702.

Walker filed suit a few months later, [1], and amended his complaint. [24]. He brings claims against all defendants for: violating due process under 42 U.S.C. § 1983 by fabricating and withholding evidence (Count I); failing to intervene, under § 1983 (Count II); conspiracy under § 1983 (Count III); Fourth Amendment malicious prosecution under § 1983 (Count IV); malicious prosecution under Illinois law (Count V); conspiracy under Illinois law (Count VI); and intentional inflection of emotional distress (Count VII). Walker also brings a *Monell* claim against the City as part of his due process claim (Count I), a respondeat superior claim against the City (Count VIII), and an indemnification claim against the City and Cook County (Count IX). Defendants move to dismiss all claims. [38]; [41]. Walker has since dismissed the failure to intervene claim (Count II) against Finnelly. [58] at 9.

## II.    Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The court must construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but the court need not accept legal conclusions or conclusory allegations. *Id.* at 678–79.

## III.    Analysis

### A.    Due Process

Walker alleges that the officers and Finnelly fabricated evidence that no camera existed in the alley and withheld evidence of the camera's existence. Walker also alleges that the officers fabricated false police reports and an inventory showing that drugs were found in Walker's possession, and that the officers withheld the true origin of those drugs.

#### 1.    *Fabricating Evidence*

The defendants move to dismiss Walker's due process claim based on fabrication of evidence, arguing that such allegations must be brought pursuant to state law through a malicious prosecution claim. Walker responds that he is not precluded from bringing a due process claim under § 1983 for fabrication of evidence and that he has properly pled such a claim.

*Saunders-El v. Rohde*, 778 F.3d 556, 559–61 (7th Cir. 2015), held that allegations of evidence fabrication can support a due process claim under § 1983, but that those allegations must be brought pursuant to state law when they sound

in malicious prosecution. This distinction was reiterated in *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016), which held that "[a]llegations of evidence fabrication may state a colorable due-process claim" but that "[a] deprivation of liberty is a necessary element of a due-process claim premised on allegations of evidence fabrication." Where deprivation of liberty is not in play, the allegation that criminal proceedings were instituted based on false evidence or testimony is essentially a claim for malicious prosecution, not a due process violation. *Saunders-El*, 778 F.3d at 560 (citing *Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009)). Unlike the plaintiffs in *Saunders-El* and *Bianchi*, Walker has alleged a deprivation of liberty—he was detained before trial and, after his conviction, he was incarcerated for several years.

The defendants also argue that Walker cannot state a due process claim based on fabrication of evidence because it is duplicative of his state-law malicious prosecution claim, which already provides him with a remedy for the alleged conduct. Walker contends that malicious prosecution and due process are not duplicative claims because they require different elements (malicious prosecution requires lack of probable cause, due process requires deprivation of liberty), and that defendants have not cited any authority forbidding both a malicious prosecution claim and a due process claim for fabrication of evidence.

Defendants cite *Terry v. Talmontas*, No. 11 CV 6083, 2013 WL 707907, at *10 (N.D. Ill. Feb. 26, 2013), and some other district court cases for the proposition that due process claims are redundant of malicious prosecution claims. But *Terry* did not

deal with a due process claim based on a conviction involving fabrication of evidence—*Terry* only involved an allegation that the plaintiff was arrested without probable cause and detained for a few weeks until his arraignment and indictment. *Terry* is not persuasive, particularly when the Seventh Circuit has recently made clear that "[t]he availability of a state-law remedy for malicious prosecution doesn't defeat a federal due-process claim against an officer who fabricates evidence that is later used to obtain a wrongful conviction." *Avery v. City of Milwaukee*, 847 F.3d 433, 441 (7th Cir. 2017) (distinguishing *Albright v. Oliver*, 510 U.S. 266 (1994), because the plaintiff was only claiming he was prosecuted without probable cause, not that he was convicted because a law enforcement official had acted in bad faith to undermine the reliability of his trial (citing *Armstrong v. Daily*, 786 F.3d 529, 539–41 (7th Cir. 2015)). A claim that the plaintiff was wrongfully convicted of a crime in a trial tainted by falsified evidence, known perjury, or the deliberate destruction of exculpatory evidence is the kind of claim "'grounded in the due process guarantee of fundamental fairness in criminal prosecutions' and has long been recognized." *Avery*, 847 F.3d at 441 (quoting *Armstrong*, 786 F.3d at 540). Here, the availability of a state-law malicious prosecution claim does not bar Walker's due process claim for fabrication of evidence.

Defendants also contend that they are entitled to qualified immunity on the fabrication of evidence claim, arguing that in 2006 (when Walker was arrested and charged), fabrication of evidence "without regard to its use or disclosure" was not a recognized constitutional violation. Defendants cite to *Buckley v. Fitzsimmons*, 20

F.3d 789 (7th Cir. 1994), for the proposition that (in 1994) there was "no authority for the proposition that the mere preparation of false evidence, as opposed to its use in a fashion that deprives someone of a fair trial or otherwise harms him, violates the Constitution." *Id.* at 797 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 281 (1994) (Scalia, J., concurring)). Walker, quite correctly, points out that he alleges more than mere preparation of false evidence that was never used. Instead, he alleges that the defendants fabricated evidence regarding the camera and the drugs and then used that evidence to secure his wrongful conviction, depriving him of a fair trial. It has long been held that the use of fabricated evidence violates a criminal defendant's constitutional rights. *See, e.g., Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014) ("For it was established law by 1985 (indeed long before), when the fabrication is alleged to have occurred, that a government lawyer's fabricating evidence against a criminal defendant was a violation of due process." (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959), *Pyle v. Kansa*s, 317 U.S. 213, 215–16 (1942), and *Mooney v. Holohan*, 294 U.S. 103, 110 (1935))). Walker will have to prove that the fabricated evidence was used to deprive him of his liberty, but he has adequately alleged an established claim. The defendants are not entitled to dismissal of Walker's claim based on qualified immunity.

### 2.   *Withholding Evidence*

As part of his due process claim, Walker alleges that the officers and Finnelly withheld evidence of the surveillance camera's existence and withheld the true origin of the narcotics purportedly found in Walker's possession. Defendants argue that Walker fails to state a due process claim because there is no *Brady* violation

when a defendant is aware of the withheld evidence. The defendants contend that Walker knew at the time of his arrest whether a camera was in the alley and whether he possessed narcotics. Walker responds that although he knew that the drugs were not his, he did not know where the police got them from and therefore lacked exculpatory or impeaching evidence. Notably, Walker does not address the defendants' argument that he knew about the camera.

Under *Brady v. Maryland*, 373 U.S. 83 (1963), due process requires prosecutors to turn over to the defense all potentially exculpatory evidence, and "[t]hat obligation extends to police officers, insofar as they must turn over potentially exculpatory evidence when they turn over investigative files to the prosecution." *Harris v. Kuba*, 486 F.3d 1010, 1014 (7th Cir. 2007). To establish a *Brady* violation, a plaintiff must prove that "(1) the evidence at issue is favorable to the accused because it is either exculpatory or impeaching; (2) the evidence has been suppressed by the government, either willfully or inadvertently; and (3) the suppressed evidence resulted in prejudice," meaning that the withheld evidence was material and there was a reasonable probability that it would have produced a different verdict. *Id*. The Seventh Circuit has emphasized, however, that *Brady* "deals with the concealment of exculpatory evidence *unknown* to the defendant." *United States v. Lee*, 399 F.3d 864, 865 (7th Cir. 2005) (emphasis added). Evidence is not suppressed when it is already known to the defendant, or when it is available to the defendant or his counsel "with minimal research or discovery through the exercise of reasonable diligence." *Harris*, 486 F.3d at 1015–16.

Walker does not state a *Brady*-based due process claim against the defendants for withholding the existence of the surveillance camera. Walker failed to respond to defendants' arguments on this point, thus forfeiting any arguments. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[A] litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss."). And in any event, Walker alleged that he was aware of the camera's existence even before his arrest. There is no *Brady* violation in such circumstances. *See, e.g., Harris*, 486 F.3d at 1015 (plaintiff's own alibi was not concealed from him and therefore was not the proper basis for a *Brady* claim).

The remainder of Walker's *Brady*-based due process claim alleges that the defendant police officers violated his right to due process by withholding the "true origin" of the inventoried drugs, i.e., that the drugs were from someone other than Walker.[2] The Seventh Circuit, however, does not permit recasting evidence-fabrication claims as *Brady*-based due process claims. *See Saunders-El*, 778 F.3d at 562 ("In the end, [plaintiff] seeks to charge the officers with a *Brady* violation for keeping quiet about their wrongdoing [fabricating evidence], not for failing to disclose any existing piece of *evidence* to the prosecution. But our case law makes clear that *Brady* does not require the creation of exculpatory evidence, nor does it compel police officers to accurately disclose the circumstances of their investigations to the prosecution."). Although Walker attempts to articulate his *Brady* claim as alleging that the officers withheld evidence as to the drugs' origin, he merely

---

[2] The complaint does not allege that Finnelly was involved with the drugs, only the camera.

repeats his fabrication of evidence claim. Moreover, because Walker knew the drugs were not his and were planted, he knew enough to pursue evidence of the true source of the drugs, and nothing in the complaint suggests that such an avenue of investigation was closed off to Walker. His due process claim is not properly brought under *Brady*, and therefore the portion of Walker's due process claim based on alleged *Brady*-violations is dismissed for failure to state a claim.[3]

### 3. *Monell*

Walker asserts a *Monell* claim against the City as part of his due process claim, asserting that the misconduct was undertaken pursuant to the policies and practices of the City of Chicago. The City moves to dismiss the *Monell* allegations, arguing that they are dependent on survival of the fabrication of evidence and *Brady*-violation due process allegations. The fabrication of evidence due process claim, however, has survived and therefore the City is not entitled to dismissal of the *Monell* claim against it.

### B. Malicious Prosecution (§ 1983)

At the time Walker pled his federal malicious prosecution claim, circuit precedent held that a malicious prosecution claim in Illinois must be brought under state law. *See Manuel v. City of Joliet*, 590 Fed. App'x 641, 642–43 (7th Cir. 2015). When the parties briefed the motions to dismiss, the appeal from *Manuel* to the

---

[3] The defendants also argue for dismissal of Walker's due process claim to the extent it relies on the allegations that Finnelly, White, and Reyes falsely testified that there was no camera in the alley, [24] ¶¶ 62–65, because the defendants are entitled to absolute immunity for their testimony. In his response brief, Walker clarified that he does not seek to hold the defendants liable for their testimony, only their pre-testimonial conduct. [58] at 9 n.2.

Supreme Court was still pending. The Supreme Court has since decided *Manuel*, confirming that a Fourth Amendment claim for unlawful post-arrest, pretrial detention exists but declining to address whether such a claim resembles malicious prosecution. *Manuel v. City of Joliet, Ill.*, 137 S.Ct. 911, 920–22 (2017). Walker pled his claim under malicious prosecution, which is not entirely consistent with *Manuel*. Therefore his federal malicious prosecution claim is dismissed, but he has leave to replead a Fourth Amendment claim consistent with *Manuel*.

### C.    Malicious Prosecution (Illinois)

To establish malicious prosecution under Illinois law, a plaintiff must allege facts showing: (1) the commencement of a criminal proceeding by the defendant; (2) the termination of the criminal proceeding in a manner indicative of plaintiff's innocence; (3) the absence of probable cause for such proceeding; (4) the defendant's malice; and (5) damages. *Swick v. Liautaud*, 169 Ill.2d 504, 512 (1996). Defendants contend that Walker fails to plausibly allege that the criminal proceedings were terminated in a manner indicative of innocence, arguing that having charges dismissed after new evidence emerged does not compel an inference that there was a lack of reasonable grounds to pursue the prosecution for drug possession. Defendants claim that Walker's Certificate of Innocence, granted pursuant to 735 ILCS 5/2-702, is irrelevant to establishing this element. Walker responds that he need not plead that circumstances of the dismissal compel an inference of innocence, only that proceedings were terminated in a manner indicative of innocence, and that he has plausibly alleged this requirement.

Defendants cite *Swick* and *Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997), for the proposition that to establish that criminal proceedings were terminated in a manner indicative of innocence, a plaintiff needs to show that the "circumstances surrounding the abandonment of the criminal proceedings must compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution." *Swick*, 169 Ill.2d at 513–14. Both cases, however, were addressing situations where criminal proceedings were abandoned due to a *nolle prosequi*, which is a voluntary dismissal and not a finding that the defendant is guilty or not guilty. *Id.*; *Washington*, 127 F.3d at 557–58. Walker's circumstances do not involve a *nolle prosequi*, and all he need plead are facts plausibly alleging that the criminal proceedings against him were terminated in a manner indicative of his innocence.

Walker has sufficiently pled this element. He has alleged that while incarcerated, he filed a petition for post-conviction relief, presenting evidence of the camera's existence. While the petition was pending, the Cook County State's Attorney's Office performed its own investigation, concluding that Finnelly, Flatley, and Reyes had perjured themselves at Walker's trial. The state moved to vacate Walker's conviction and sentence, and to dismiss the charges against him. The Cook County Circuit Court vacated the indictment against Walker, dismissed all charges, and later granted him a Certificate of Innocence under 735 ILCS 5/2-702. While the defendants argue that evidence of the existence of a camera does not show that Walker did not possess the drugs for which he was charged, these other facts also

plausibly allege that Walker's criminal proceedings were terminated in a manner indicative of innocence. Walker's Certificate of Innocence is not irrelevant—to obtain it, he had to prove his innocence by a preponderance of the evidence.[4] Illinois courts have held that the statute requires a finding of actual innocence, as opposed to a finding of not guilty or insufficient evidence. *Rudy v. People*, 2013 IL App (1st) 113449, ¶¶ 14–15; *People v. Fields*, 2011 IL App (1st) 100169, ¶ 19.

The statute also provides, however, that "[t]he decision to grant or deny a certificate of innocence shall be binding only with respect to claims filed in the Court of Claims and shall not have a res judicata effect on any other proceedings." 735 ILCS 5/2-702(j). Citing to *Rodriguez v. Cook County, Illinois*, 664 F.3d 627 (7th Cir. 2011), the defendants argue that § 2-702(j) makes Walker's Certificate of Innocence irrelevant to his malicious prosecution claim. But the statute only states that the certificate does not have a res judicata effect on any other proceedings—it

---

[4] To obtain a certificate of innocence under 735 ILCS 5/2-702(g), a petitioner must prove by a preponderance of evidence that:

  (1) the petitioner was convicted of one or more felonies by the State of Illinois and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence;

  (2) (A) the judgment of conviction was reversed or vacated, and the indictment or information dismissed or, if a new trial was ordered, either the petitioner was found not guilty at the new trial or the petitioner was not retried and the indictment or information dismissed; or (B) the statute, or application thereof, on which the indictment or information was based violated the Constitution of the United States or the State of Illinois;

  (3) the petitioner is innocent of the offenses charged in the indictment or information or his or her acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the State; and

  (4) the petitioner did not by his or her own conduct voluntarily cause or bring about his or her conviction.

does not bar its evidentiary use or relevance in later proceedings. *See, e.g., Kluppelberg v. Burge*, 84 F.Supp.3d 741, 745 (N.D. Ill. 2015) (denying motion in limine to bar use of Certificate of Innocence at trial on malicious prosecution claim and contrasting § 2-702(j) with other Illinois statutes expressly precluding using certain findings as evidence). And *Rodriguez* does not address whether a certificate of innocence is relevant to the elements of malicious prosecution, but instead held that a certificate of innocence did not create a new claim, did not restart the statute of limitations, and did not authorize relitigation of a previously decided federal suit. 664 F.3d at 629–31.

Walker has sufficiently alleged a malicious prosecution claim under Illinois law.

### D.     Intentional Infliction of Emotional Distress

Defendants argue that Walker's intentional infliction of emotional distress (IIED) claim is untimely because it is subject to a one-year statute of limitations under the Illinois Tort Immunity Act, 745 ILCS 10/8-101(a), and the alleged wrongful conduct occurred more than a year prior to Walker filing suit in July 2016.[5] Defendants contend that *Bridewell v. Eberle*, 730 F.3d 672 (7th Cir. 2013), rejected the continuing tort doctrine for IIED claims. Walker agrees that the one-year statute of limitations applies to IIED claims. But he argues that under *Lieberman v. Liberty Healthcare Corp.*, 408 Ill.App.3d 1102, 1112 (4th Dist. 2011),

---

[5] The Illinois Tort Immunity Act requires civil actions against local entities to be "commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101(a).

which extended *Heck v. Humphrey*, 512 U.S. 477 (1994), to claims brought under Illinois law, a plaintiff cannot bring a state-law tort claim inconsistent with the validity of an existing conviction. Walker argues that he was barred from bringing an IIED claim based on his wrongful conviction until that conviction was overturned.

*Bridewell* held that a claim of intentional infliction of emotional distress in the course of an arrest and prosecution accrued on the date of the arrest because, under Illinois law, a claim accrues when the victim first suffers injury and knows its cause. 730 F.3d at 678. *Bridewell* also held that such a claim is not a continuing tort—the time for accrual is not extended indefinitely if the injury party does not remedy the distress. *Id*. However, as recognized in *Gonzalez v. City of Waukegan*, No. 16 C 2906, 2016 WL 7451627, at *8–9 (N.D. Ill. Dec. 28, 2016), *Bridewell* did not address Walker's situation. Walker does not base his claim on his mere arrest and prosecution, but he alleges that the defendants' intentionally inflicted emotional distress by fabricating evidence and causing his wrongful conviction. Moreover, under *Lieberman*'s application of *Heck* to Illinois claims, Walker could not bring such an IIED claim until his conviction was overturned. The Seventh Circuit addressed an identical situation in *Parish v. City of Elkhart*, 614 F.3d 677, 683–84 (7th Cir. 2010), holding that under Indiana's adoption of *Heck*, the plaintiff could not have brought his IIED claim (based on fabrication of evidence and a wrongful conviction) until his conviction was disposed of in a manner favorable to him—i.e., when he was exonerated. *See also Rodriguez*, 664 F.3d at 631 (under *Heck*,

plaintiff's claim based on wrongful conviction accrued when the conviction was vacated).

Defendants argue that *Lieberman*'s application of *Heck* was case-specific and that the Illinois appellate court did not intend to apply *Heck* generally to all claims under Illinois law. But this misreads *Lieberman*'s holding and ignores authority recognizing *Lieberman* as adopting *Heck* to claims arising under Illinois law. *See Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1137 (7th Cir. 2012) (Hamilton, J., concurring) (referring to "Illinois's embrace of [the *Heck*] rule in *Lieberman*"); *Smith v. Burge*, 222 F.Supp.3d 669, 2016 WL 6948387 at *15 (N.D. Ill. 2016); *Starks v. City of Waukegan*, 946 F.Supp.2d 780, 803–04 (N.D. Ill. 2013). Defendants also rely on *Phillips v. City of Chicago*, No. 14 C 9372, 2015 WL 5675529, at *7 (N.D. Ill. Sept. 24, 2015), for the proposition that a successful IIED claim would not have necessarily impugned Walker's conviction and therefore was not *Heck*-barred before his conviction was vacated. But *Phillips* does not address *Lieberman* or *Parish*, and is therefore not persuasive. Moreover, the IIED claim alleged in the complaint is tied to the validity of the conviction because it alleges that the extreme and outrageous conduct was related to the trial itself. Walker's IIED claim based on his wrongful conviction is not time-barred.

## E. Conspiracy Claims

Finnelly and Cook County argue that Walker's state-law and § 1983 conspiracy allegations are too general to state a claim and that Walker does not plausibly allege that Finnelly conspired with officers about the drugs. Walker responds that conspiracy claims are not subject to a heightened pleading standard,

that he need not plead a specific agreement, and that he plausibly alleged that Finnelly conspired with the officers to deny the existence of the camera.

To state a claim for civil conspiracy under Illinois law, "a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement." *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill.2d 102, 133 (1999). For a § 1983 conspiracy claim, the plaintiff must allege that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). Because Walker's conspiracy claims are not grounded in fraud, they are not subject to the heighted pleading requirements of Rule 9(b). But Walker must allege the parties, the general purpose, and the approximate date of the conspiracy. *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006). Walker's conspiracy claims, while somewhat conclusory in the counts themselves, are sufficiently pled because they incorporate his other allegations. Taken together, these allegations describe the defendants allegedly fabricating drug evidence and evidence of the camera's nonexistence, all for the purpose of convicting Walker at trial. While Walker does not plead the exact date of the conspiracy, he sufficiently pleads the approximate timing—defendants took steps in furtherance of the alleged conspiracy beginning on the date of his arrest and continuing through his trial. And although Finnelly is correct that the complaint does not allege that he played a role in fabricating the drug evidence, Walker alleges that Finnelly deliberately and carefully photographed the alley to imply that no camera existed. From the

allegations in the complaint, it is plausible to infer that Finnelly intended to work in concert with the officers by corroborating their version of events and ensuring Walker's conviction. Walker has sufficiently pled his conspiracy claims against Finnelly. Although not an argument raised by the defendants, I do note that every defendant is alleged to be a state actor, and in such situations, a standalone conspiracy claim is usually superfluous. *See Scott v. City of Chicago*, 619 Fed. App'x 548 (7th Cir. 2015) (citing *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009)).

### F.      Remaining Claims

Defendants also argue for dismissal of the conspiracy claims and the remaining claims (failure to intervene against the officers, respondeat superior, indemnification) because they are dependent on the survival of Walker's other claims alleging the underlying tortious conduct. Only some of Walker's claims have been dismissed: his *Brady*-violation due process claim, his failure to intervene claim against Finnelly, and his federal malicious prosecution claim (with leave to replead). But his fabrication of evidence due process claim, state-law malicious prosecution claim, and intentional infliction of emotional distress claims have survived. Therefore, these other dependent claims are not subject to dismissal.

# IV.    Conclusion

Defendants' motions to dismiss, [38], [41], are granted in part, denied in part. Count I is dismissed as to the *Brady*-violation due process claim. Count II is dismissed as to Finnelly. Count IV is dismissed without prejudice, with leave to replead by August 8, 2017.

ENTER:

Manish S. Shah
United States District Judge

Date:  June 20, 2017