# IN THE UNITED STATES DISTRICT COURT
# FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JERMAINE WALKER, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL WHITE, et al., <br><br> Defendants. | Case No. 16-cv-7024 <br> Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motion to Compel Documents Withheld by the Cook County Public Defender's Office [200] and Defendants' Motion to Compel Deposition Testimony of Ingrid Gill [202]. For the reasons set forth below, Defendants' Motions [200 and 202] are DENIED.

## I. INTRODUCTION

Plaintiff ("Walker") filed this § 1983 action against Defendants alleging that his arrest and conviction for possession of narcotics were based on fabricated evidence and a conspiracy against him, which led to his false imprisonment and ten years of incarceration before his conviction was vacated and the charges against him dismissed.[1] In his Second Amended Complaint (Dkt. 122, "SAC"), Walker claims that Defendants violated his Fourth and Fourteenth Amendment rights, failed to

---

[1] On November 2, 2018, the District Judge consolidated this case with that of Russell Walker, Jermaine's brother (18-cv-4028), for the purposes of discovery. (Dkt. 193). In this opinion, "Walker" refers to Jermaine Walker.

intervene, conspired against him by fabricating and withholding evidence, and are liable for malicious prosecution and other state law violations.

This Court previously resolved the parties' dispute about the August 24, 2010 letter written by Walker's post-conviction counsel, Ms. Gill, in response to Walker's ARDC complaint against her ("Gill Letter"). Attempting to claw back the Gill Letter, Walker argued that the letter was protected work product and its disclosure by his prior counsel in this matter was inadvertent. Defendants responded that the Gill Letter was "factual, not work product" and even if it was work product, any protection was waived by attorney Gill in responding to the ARDC and then by Walker's former attorneys producing the document to Defendants in this litigation. This Court ruled that the Gill Letter contained both fact and opinion work product, but Walker waived work product protection when he produced the letter to Defendants. (Dkt. 170). The Court did not need to decide whether Gill waived her own work product protection by disclosing to the ARDC. (*Id.* at 5, n. 3).

Defendants now want more information about Gill's investigation into Walker's underlying criminal case. They have subpoenaed documents from Gill's former employer, non-party Cook County Public Defender's Office (CCPDO). The CCPDO produced a privilege log prompting a motion by Defendants and an *in camera* inspection by the Court. At Gill's deposition, the CCPDO, Plaintiff and Gill all asserted work product privilege—meaning Gill refused to answer questions about topics including the names of the investigators assigned to the Walker case, the witnesses that were interviewed, who interviewed Walker's brother, Russell Walker,

and what Russell said. Defendants ask the Court to overrule Gill's and CCPDO's work product objections and order production of the documents in the privilege log and allow further questioning of Gill.[2]

## II. DISCUSSION

### A. Work Product Doctrine

"Work product immunity furthers the client's interest in obtaining complete legal advice and … advances the adversarial system by providing incentives [to attorneys] to collect information and thoroughly prepare for litigation." *Appleton Papers, Inc. v. EPA*, 702 F.3d 1018, 1024–25 (7th Cir. 2012) (internal citation omitted). In *Hickman v. Taylor*, the Supreme Court explained:

> [I]t is essential that a lawyer work with a certain degree of privacy…Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways…Were such materials open to opposing counsel . . . much of what is now put down in writing would remain unwritten.

329 U.S. 495, 511 (1947). Defendants argue that the scope of the work product doctrine is "limited" (Dkt. 202 at 8), failing to recognize two established principles that the doctrine is "broader than the attorney-client privilege," and both "fact" and

---

[2] The motion to compel documents [200] is brought by Defendants Cook County, Thomas Finnelly, and officers Michael White, Eric Reyes, Sebastian Flatley, Brian Daly, Raul Baeza Jr., and Thomas Gaynor. The motion to compel deposition testimony [202] is brought by the Defendant Officers only.

"opinion" work product is protected. *Appleton Papers,* 702 F.3d at 1024. "'Fact' work product is discoverable in the rare case where party makes the 'substantial need' showing." *Id.* at 1023. Even if that showing is made, opinion work product remains protected. *Id*. Once the party claiming the protection shows that the doctrine applies, the burden shifts to the party seeking disclosure of fact work product to show a substantial need for the information and that the substantially equivalent information cannot be obtained without undue hardship. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii); *McCook Metals L.L.C. v. Alcoa, Inc.,* 192 F.R.D. 242, 259 (N.D. Ill. 2000).

"Unlike the attorney-client privilege, the attorney has an independent privacy interest in his work product and may assert the work-product doctrine on his own behalf." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2009). Work product protection "applies to attorney-led investigations when the documents at issue can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id*. at 622 (internal quotations and citation omitted). The protection also "endures after termination of the proceedings for which the documents were created, especially if the old and new matters are related." *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006).

**B. The Information Defendants Seek**

Defendants seek similar information from both Ms. Gill and the CCPDO documents: the identity of CCPDO investigators who worked on the Walker case; the identity of witnesses; who was present for the interviews of witnesses; the number of

times witnesses were interviewed; witness statements about the cameras in the alley; findings by investigators about the camera; Russell Walker's statements to investigators about the location of the arrest and whether he gave Jermaine drugs before they were arrested.[3]

### C. Defendants' Motion to Compel Deposition Testimony of Ingrid Gill

The Court disagrees with Defendants' assertions that the information sought at Gill's deposition[4] and the material contained in the Gill Letter is not protected by the work product doctrine.

### *1. The Court finds the information sought in the Gill deposition is protected by the work product privilege*

Defendants argue that Gill should be compelled to discuss facts about her investigation of Walker's criminal case because "these facts fall outside the scope of work product privilege." (Dkt. 202 at 11). Defendants are correct that just because an attorney discovers facts does not mean that those facts are cloaked with work product protection for all purposes. But the question is not whether the facts are discoverable, but whether they are discoverable *from Gill or the CCPDO*. In *City of Lakeland Emples. Pension Plan v. Baxter Int'l Inc.*, 2013 U.S. Dist. LEXIS 69433 (N.D. Ill. May 16, 2013), the defendant made a similar argument to Defendants' here. Citing *Appleton Papers*, the Court described defendant's argument that the work product

---

[3] At Ms. Gill's deposition, she testified about her knowledge about the location of the arrest and defense counsel asked her about her office's decision not to reassign her off Walker's case. (Gill Dep. at pp. 72-72). The Court does not find these questions relevant to this case.

[4] Ms. Gill was deposed on December 15, 2018. The deposition ended early because she became ill. Before reconvening, the parties agreed to seek judicial resolution about whether the work product protection was properly invoked at the deposition.

doctrine does not protect the "underlying facts" as "artfully imprecise." *Id*. at *3–4. The Court explained that a party may conduct discovery about factual issues, but that was "beside the point" because the issue was whether documents "created by the witnesses (or counsel for the plaintiffs based on communications with the witnesses) that reflect the witnesses' knowledge about such factual issues are discoverable." *Id*. As the Seventh Circuit has acknowledged, the *Hickman* Court "protected the facts the lawyer obtained from interviewing witnesses." *Appleton Papers,* 702 F.3d at 1024.

Further, courts have found that summarizing what a witness said (e.g. notes or testimony about any interview of Russell Walker) reveals an attorney's mental processes at least to some degree and deserves *the greater protection for opinion work product. See United States SEC v. Sentinel Mgmt. Grp., Inc.*, No. 07 C 4684, 2010 U.S. Dist. LEXIS 127355, at *27 (N.D. Ill. Dec. 2, 2010) ("The attorney exercises judgment in determining which witnesses to interview, what subject areas to cover (and not cover), how to frame specific questions and in what order, and how much time to devote to particular topics.").

Selectively quoting *Hickman*, Defendants argue that the work product doctrine "must yield to the interests of full and fair discovery." (Dkt. 202 at 12). But they ignore that in *Hickman*, the Supreme Court affirmed the Court of Appeals' holding that the information sought was protected work product. 329 U.S. at 500, 509–514. The Court rejected the "attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties." *Id*. at 510. Defendants'

reliance on *EEOC v. Jewel Food Stores, Inc.*, 231 F.R.D. 343 (N.D. Ill. 2005), *Patterson v. Burge,* 2007 U.S. Dist. LEXIS 33102 (N.D. Ill. May 4, 2007) and *Clark Equip. Co. v. Lift Parts Mtg. Co.*, 1985 U.S. Dist. LEXIS 15457 (N.D. Ill. Sep. 30, 1985) is not persuasive.[5] These cases compelled *a party* to respond to discovery and did not involve deposing counsel. As in *Hickman*, the present case is *not* one where a party has "refuse[d] to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney." 329 U.S. at 504. In this case the concern is testimony from an attorney.

In addition, *Jewel, Patterson,* and *Clark* pre-date *Appleton Papers*, where Seventh Circuit stressed that the work product privilege protects "*all* 'documents and tangible things that are prepared in anticipation of litigation.'" 702 F.3d at 1023–24 (emphasis in original). *See also id.* at 1020 ("API also misconstrues the [work product] privilege by erroneously suggesting that facts underlying the conclusions are unprotected."). Further, Defendants' contention that only "documents and tangible things" are protected overlooks established case law that the work product doctrine extends to "intangibles". In *Hickman*, the Supreme Court stated that attorney work product is reflected in "tangible *and intangible* ways." 329 U.S. at 511 (emphasis added); *see also*

---

[5] The court in *Jewel Food* concluded that "EEOC's interrogatories fall on the side of seeking permissible factual information, and not impermissibly seeking mental impressions." 231 F.R.D. at 346. In *Patterson*, the court distinguished "documents as to which work product protection has been asserted" from "factual information" sought in plaintiff's deposition and concluded that the latter was "not protected work product." 2007 U.S. Dist. LEXIS 33102 at *9–10. In *Clark*, the court ordered a party to respond to discovery and stated, "[t]he attorney work product privilege does not preclude the disclosure of facts or the identity of witnesses or documents simply because their existence was discovered by counsel." 1985 U.S. Dist. LEXIS 15457 at *19.

*In re Seagate Tech., LLC*, 497 F.3d 1360, 1376 (Fed. Cir. 2007) ("[W]ork product protection remains available to 'nontangible' work product…Otherwise, attorneys' files would be protected from discovery, but attorneys themselves would have no work product objection to depositions.").

### *2. The information contained in the Gill Letter is protected by the work product privilege*

Defendants assert that the letter does not constitute work product because Gill was trying to protect her law license in drafting the letter, not anticipating litigation. The letter responded to Walker's ARDC complaint against her, and, as Defendants acknowledge, summarized her factual findings and legal conclusions of Walker's post-conviction criminal case. (Dkt. 202 at 16, Dkt. 200-3, Exh. C). This Court previously found that the Gill Letter contained both fact and opinion work product under Fed. R. Civ. P. 26(b)(3), and found additional support for applying work product protection to the letter in *Webster Bank, N.A. v. Pierce & Assocs., P.C.*, 2018 U.S. Dist. LEXIS 18653, at *18 (N.D. Ill. Feb. 5, 2018) (concluding "the attorney-client privilege and the work-product doctrine may apply to Defendant's letter and/or some of the other materials submitted to the ARDC," and allowed defendant to redact or log "privileged materials or statements in its submission to the ARDC.").[6]

Case law describing the nature of ARDC proceedings also convinces this Court that ARDC disciplinary proceedings fall within "anticipation of litigation." *See*

---

[6] In the prior ruling, this Court specifically noted that Walker argued the Gill Letter was prepared in anticipation of litigation and Defendants did not dispute that assertion. (Dkt. 170 at 4). The Court agreed with Walker that the letter was protected by the work product doctrine (but agreed with Defendants that he waived that protection). *Id*. at 4–5. Defendants have never challenged that ruling.

*Novoselsky v. Brown*, 822 F.3d 342, 353 (7th Cir. 2016) ("the filing of a complaint triggers the judicial role of the ARDC"); *Betts v. O'Malley*, 1991 U.S. Dist. LEXIS 10953, at *5 (N.D. Ill. Aug. 2, 1991) ("Given the elaborate procedures the Illinois Supreme Court has fashioned for the discipline of attorneys, especially the opportunity for Illinois Supreme Court review, we have no doubt that the proceedings…are judicial in nature.").

Defendants' argument that the Gill Letter is not work product because Gill drafted it for her own protection and not on behalf of Walker, is not persuasive. The Gill Letter memorializes her work product from representing Walker. The ARDC anticipated that attorneys would need to summarize and disclose their work product to participate in ARDC proceedings. Illinois ARDC Rule 251(b) protects material prepared in anticipation of, or during, ARDC proceedings (and as discussed below, also protects against subject matter waiver).

The cases Defendants cite are not persuasive. For example, *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655 (S.D. Ind. 1991) involved insurance claims documents; it did not address documents prepared by an attorney describing her work on behalf of a client. To the contrary, *Jackson v. City of Chi.*, 2006 U.S. Dist. LEXIS 56675 (N.D. Ill. July 31, 2006) involved a similar situation to the one here: plaintiff's former assistant public defender raised work product objections to deposition questions in plaintiff's civil suit. The *Jackson* court explained (*id*. at *16):

> Defendants have failed to demonstrate even that they are entitled to the attorney-notes themselves, much less that they are entitled to go further and probe the attorney's understanding of her work product.[Assistant public defender] Boughton's account of her notes would (over and above

concerns about any work product reflected in the drafting of the notes themselves) reflect her mental prioritizing and case-strategy-formation, all of which the work product doctrine is designed to protect.

### *3. Waiver*

If the Court finds the Gill Letter is protected by the work product privilege, Defendants argue that Gill's submission to the ARDC waived her work product protection in this forum. This is a subject matter waiver argument. But Federal Rule of Evidence 502 "abolishe[d] the dreaded subject-matter waiver, i.e., that any disclosure of privileged matter worked a forfeiture of any other privileged information that pertained to the same subject matter." *Appleton Papers,* 702 F.3d at 1027 ("by requiring the government to disclose all material related to documents it used we would discourage creating drafts and supporting documentation in the first place.") (internal quotations and citation omitted). Part (c) of FRE 502 specifically addresses situations in which the disclosure was made in a state proceeding. It provides that there is no waiver in a federal proceeding if the disclosure "is not a waiver under the law of the state where the disclosure occurred." As the CCPDO points out, under ARDC Rule 251(b)(3): "Disclosure or production of information or materials to a Respondent, Petitioner, or the Administrator during an investigation or proceeding does not constitute subject matter waiver of the party's work product privilege."

Defendants ask the Court to disregard the ARDC rules because only federal law applies to the issue of work product waiver. But FRE 502(c) anticipates this very situation, directing a federal court to assess whether a disclosure would be waiver under the state law. Here, ARDC Rule 251(b)(3) states that disclosure during an

ARDC investigation or proceeding is *not* subject matter waiver of work product protection. Notwithstanding their argument that the ARDC rules should be disregarded, Defendants assert that the prohibition on subject matter waiver in the ARDC rule does not apply because Gill intentionally disclosed work product. However, ARDC Rule 251(b)(3) does not distinguish between "express" and "implied" waiver.[7] Therefore, under FRE 502(c) and ARDC Rule 251(b)(3), Gill's disclosure to the ARDC did not forfeit her work product claim in this proceeding.

In a final attempt to establish waiver, Defendants assert that Gill waived work product protection as to her investigation in this case when she discussed it with an Assistant State's Attorney (ASA) in April 2016. At Gill's deposition, she denied any recollection of this conversation. Defendants attempted to refresh her recollection by showing her a document purporting to memorialize the conversation prepared by the ASA in April 2016. (*see* Dkt. 202 at 21; Gill Dep. Dkt. 202-1, Exh. A, ("Gill Dep") 34:20-35:9). Gill responded emphatically that it did not refresh her recollection. (*Id.* at pp. 35–39). This does not constitute waiver. *Cf. Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 479 (N.D. Ill. 2002) ("only disclosures that are 'inconsistent with the adversary system' are deemed to waive work-product protection.").

---

[7] Regardless of whether the stage at which Gill wrote her letter was considered public or private under Illinois Supreme Court Rule 766, ARDC Rule 251(b)(3) states that disclosure does not result in subject matter waiver of work product protection, whether it was during an "investigation" or "proceeding."

**D. Defendants' Motion for Production of Withheld Cook County Public Defender's Office Documents.**

The Court has reviewed the documents provided by the CCPDO, bates labeled CCPDO 299–300 and 320–383, and CCPDO's privilege log (Dkt. 200-2). Most of the documents are investigative requests by CCPDO attorneys and the investigators' summaries in response. Defendants do not challenge the CCPDO's claim of work product protection over the documents,[8] but contend that they have a substantial need to know, for example, what witnesses said to investigators and what the investigators learned about the camera in the alley. The Court's analysis here of whether Defendants have met their burden to show substantial need applies as well to their Motion to Compel Deposition Testimony of Gill.

Defendants argue work product protection can be overcome because: (1) the information in the documents is essential to their case; (2) there is no risk of disruption to the attorney-client relationship because it no longer exists; (3) the information will refresh witnesses' memories or impeach their testimony; (4) the information is reliable because it was gathered close in time to the 2006 arrest; and (5) they cannot get the information elsewhere.[9]

---

[8] Indeed the work product doctrine "encompasses documents prepared in anticipation of litigation by a party's representative or agent." *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 244 F.R.D. 412, 424 (N.D. Ill. 2006); *see also Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 330 (N.D. Ill. 2008) (noting that the work product doctrine can apply to material prepared by any representative of the client including an investigator).

[9] Defendants rely on *Grochocinski*, 251 F.R.D. 316, which discussed factors to be considered in deciding whether the substantial need test has been met. These factors have not been expressly adopted by the Seventh Circuit. Therefore this Court is not confined to the *Grochocinski* factors and instead assesses Defendants' reasons in light of Seventh Circuit case law and other cases in this district.

Defendants have not met their burden to show a "substantial need" and that the substantial equivalent cannot be obtained without "undue hardship." *See* Fed. R. Civ. P. 26(b)(3)(A)(ii); *see also Eagle Compressors,* 206 F.R.D. at 478 (the burden on the party seeking the discovery is "difficult to meet and is satisfied only in 'rare situations, such as those involving witness unavailability.'") (citation omitted). Defendants fail to recognize that "[d]isclosure of witness interviews and related documents [] is particularly discouraged. ('Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes . . . .')." *S. Berwyn Sch. Dist. 100*, 600 F.3d at 622 (quoting *Upjohn Co. v. United States,* 449 U.S. 383, 398–99 (1981)).

As to the Defendants' second argument, the Seventh Circuit has stated that work product protection endures after termination of the underlying proceeding. *Hobley*, 433 F.3d at 949. So the question is not whether producing the documents would "disrupt" the attorney-client relationship, but rather, whether an attorney invoking her work product claim would harm the client's interests. *See id*. None of the parties argue that Gill's or CCPDO's work product claim is inconsistent with Plaintiff's interests in this litigation. Further, Defendants' claim that there is no "risk" to further disclosure because Gill's strategy has already been disclosed in the Gill Letter glosses over Gill's and the CCPDO's independent rights to assert work product protection despite Walker's waiver.

Defendants also argue the documents would be used to refresh witnesses' memories or impeach their testimony. For example, Defendants argue that at the

time Russell gave statements to the CCPDO, he had "no financial motivation to lie." (Dkt. 200 at 8). However, the Seventh Circuit has been "extremely reluctant to allow discovery of attorney work product simply as impeachment evidence." *S. Berwyn Sch. Dist. 100*, 600 F.3d at 622. Defendants contend that the CCPDO documents are reliable because they were created close in time to Walker's February 2006 arrest. But as the privilege log shows, there is only one work product document from 2006[10] and several documents from later years (2012–16). This Court has not identified a Seventh Circuit case stating that the reliability of a document supports a finding of substantial need. To the contrary, courts have stated that the "possibility of a faded memory is not sufficient to overcome work-product protections." *Ellis v. City of Milwaukee*, 2016 U.S. Dist. LEXIS 77189, at *7 (E.D. Wis. June 14, 2016).

Finally, Defendants argue that they cannot get the information elsewhere. But they do not address whether they have made efforts to obtain this information elsewhere or why the substantial equivalent cannot be obtained without undue hardship. *See Eagle Compressors, Inc.*, 206 F.R.D. at 479 (plaintiff did not show that facts in the letter were not discoverable by other means). Defendants do not discuss the availability of the information from police reports, the prosecutorial file, public record from Walker's underlying criminal case, the already-disclosed Gill ARDC Letter, other discovery produced by Walker in this case, Russell Walker's deposition (which has not yet occurred), or former ASA Ms. Stack who Defendants say is a witness in this case. Defendants also gloss over the fact that the State's Attorney did

---

[10] The bates numbers are CCPDO349–58 for this document, however, these are duplicates of the same one-page document.

its own investigation of Walker's case, leading it to file a motion to dismiss and vacate his conviction, which the state court judge granted (while Ms. Gill's post-conviction motion was *not* granted). (SAC, ¶¶ 71–75; Gill Dep. at p. 11).

In fact, the record shows Defendants already have information about the public defender's investigation. Defendants admit that the Gill Letter described "in detail" the CCPDO investigation. (Dkt. 200 at 2). The letter summarizes what Russell Walker told the investigator about Jermaine, what three Lawrence House employees told investigators, and provides another witness name (Dkt. 200-3, Exh. C). The CCPDO privilege log identifies names of the investigators.[11] In a prior filing in this case (Dkt. 161), Defendants' counsel submitted an affidavit attaching Walker's amended post-conviction petition, which identified two Lawrence House employee witnesses and attached their affidavits describing what they knew about the camera. At Gill's deposition, defense counsel asked Gill if a particular investigator assisted in her investigation of Walker's case, and she responded "yes." (Gill Dep. 59:5-23). Walker's supplemental Rule 26(a)(1) disclosures (Dkt. 205) also identify witnesses with knowledge of the camera in the alley and Walker's arrest.

Therefore, Defendants have not demonstrated that this is one of the "*rare*" cases where a party has made the substantial need showing to overcome the work product protection. *See Appleton Papers*, 702 F.3d at 1023 (emphasis added).

---

[11] In reviewing the privilege log and documents, the Court noted that there is correspondence between Ms. Gill and Investigators "C. Young" and "Thomas/Clements" but the privilege log does not list these investigator names. Within 14 days of the date of this Order, the CCPDO is ordered to provide Defendants an amended log to properly reflect this correspondence.

## III. CONCLUSION

For the reasons discussed, Defendants' Motion for Production [200] and Motion to Compel Deposition Testimony [202] are DENIED. Status hearing set for May 23, 2019 remains set.

E N T E R:

Dated: May 2, 2019

MARY M. ROWLAND
United States Magistrate Judge